## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DONALD STEWART,                  )
                                 )
     Movant,                     )
                                 )
v.                               )          No. 4:20 CV 1880 CDP
                                 )
UNITED STATES OF AMERICA,        )
                                 )
     Respondent.                 )

## <u>MEMORANDUM AND ORDER</u>

This matter is before me on the Motion to Vacate, Set Aside or Correct

Sentence pursuant to 28 U.S.C. § 2255 filed by movant Donald Stewart.  A

superseding indictment charged Stewart with conspiracy to distribute and possess

with intent to distribute cocaine and heroin (Count I) and three counts of using a

firearm in furtherance of a drug trafficking crime resulting in the death of three

persons (Counts II through IV).  Criminal Case No. 4:15 CR 441 CDP.  The

evidence at trial showed that Stewart was part of an extensive conspiracy to

distribute heroin and cocaine and that he acted as "enforcer" or "shooter" for

Donald White, leader of the drug trafficking organization.  After a nine-day trial,

the jury found Stewart guilty of the drug conspiracy count and two counts of using

a firearm resulting in death.  ECF 228 in 4:15 CR 441 CDP.  The jury found him

not guilty on the remaining count of use of a firearm in furtherance of a drug trafficking crime resulting in death (Count II).

On January 24, 2019, I sentenced Stewart to 20 years' imprisonment on Count One and life imprisonment on Counts Three and Four, with the sentences for Counts Three and Four to run concurrently to one another but consecutively to the sentence on Count One.  ECF 292 in 4:15 CR 441 CDP.

Stewart appealed the judgment to the Eighth Circuit Court of Appeals, arguing that I erred in admitting evidence of five other shootings.  In a per curiam opinion, the Eighth Circuit affirmed Stewart's conviction on September 27, 2019. *United States v. Stewart*, 777 Fed. App'x 849, 850 (8th Cir. 2019).  The mandate issued on November 7, 2019.  ECF 322 in 4:15 CR 441 CDP.

On December 28, 2020, Stewart filed the instant motion.  ECF 1.  On November 1 and 12, 2021, Stewart sought leave to  "Amend or Supplement and/or Clarify" his § 2255 motion.   ECF 21, 23.  The government responded to the pending motions on January 18, 2022.  ECF 27.  In addition to responding to the merits of the claims, the government objects to Stewart's motions to amend to the extent he seeks to assert new claims that do not relate back to his original § 2255 motion.

## Discussion

### A. Motions to Amend

There is no dispute that Stewart's original petition was timely filed but that any new claims which do not relate back to Stewart's original filing are time-barred under 28 U.S.C. § 2255:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

1) the date on which the judgment of conviction becomes final;

2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Stewart contends that the one-year statute of limitations which applies to § 2255 motions should be tolled due to the COVID-19 pandemic.  The limitations period for 28 U.S.C. § 2255 motions is not jurisdictional and is therefore subject to the doctrine of equitable tolling. *English v. United States*, 840 F.3d 957, 958 (8th Cir. 2016).  Nevertheless, the doctrine of equitable tolling provides an

"exceedingly narrow window of relief." *Deroo v. United States*, 709 F.3d 1242, 1246 (8th Cir. 2013).

"The one-year statute of limitation may be equitably tolled only if the movant shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013). The extraordinary circumstances must not be attributable to the movant and must be beyond his or her control. *Byers v. United States*, 561 F.3d 832, 836 (8th Cir. 2009). The movant must also demonstrate that he acted with due diligence in pursuing his petition. *E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006). The use of equitable tolling "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002).

In Ground One of his motion, Stewart asserts that the statute of limitations should be equitably tolled for eight months because his institution was under strict lockdown procedures due to the COVID-19 pandemic since April 1, 2020.

Ground One is not a cognizable ground for relief in a habeas case, and to the extent it is construed as an argument for equitable tolling, it is denied. The Eighth Circuit affirmed Stewart's conviction in September of 2019 and issued its mandate

in November of 2019.[1]  Stewart therefore had ample time to research and draft his

§ 2255 motion prior to the institution's lockdown in April of 2020, and indeed, he

did so by timely filing a lengthy 2255 motion asserting 12 grounds for relief.  The

doctrine of equitable tolling does not permit Stewart to continually amend his 2255

motion beyond the limitations period to assert additional claims given that he was

able to timely file his motion in the first instance.

      "Claims made in an untimely filed motion under § 2255 may be deemed

timely if they relate back to a timely filed motion as allowed by Federal Rule of

Civil Procedure 15(c)."  *Taylor v. United States,* 792 F.3d 865, 896 (8th Cir. 2015)

(quoting *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010)).  An

amendment to a pleading relates back to the original pleading when "the

amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence set out – or attempted to be set out – in the original pleading."  *Id*.

(quoting Fed .R. Civ. P 15 (c)(1)(B)).  "To arise out of the same conduct,

transaction, or occurrence, the claims must be tied to a common core of operative

facts."  *Id*. (cleaned up).  New claims must arise out of the "'same set of facts'" as

the original claims, and "[t]he facts alleged must be specific enough to put the

opposing party on notice of the factual basis of the claim."  *Id*. (citations omitted).

---

[1] Stewart did not file a petition for writ of certiorari to the United States Supreme Court.

To the extent Stewart attempts to bring ineffective assistance of counsel claims based on an alleged conflict of interest (Ground 3 in the amended motion), counsel's failure to question jail personnel about cell assignments (Ground 4 in the amended motion), and counsel's failure to call a witness to testify that there was not a back door to 5129 Northland (Ground 11) in his amended motion, the claims will be denied as untimely because they do not relate back to the original motion. The government does not object to the motion to amend with respect to the remaining claims, so the Court grants the motion to amend and will consider the remaining claims raised in the amended motion as timely filed. The original motion is superseded by the filing of the amended motion and will be denied as moot. *In re Wireless Tel. Fed. Cost Recovery Fee Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).

### B. Need for Evidentiary Hearing

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (cleaned up). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *United States v. Anjulo-Lopez*, 541 F.3d 814, 817 (8th Cir. 2008) (quotation omitted). For instance, "[a] district court need not hold an evidentiary

hearing if the facts alleged, taken as true, would not justify relief." *Larson v. United States,* 905 F.2d 218, 220–21 (8th Cir. 1990) (citation omitted).  Moreover, in conducting this inquiry, courts may dismiss allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (cleaned up).

Because of the nature of the allegations made in Grounds 9 (called Ground 8 in the amended motion) and 11 of Stewart's motion, I set an evidentiary hearing on those two claims only and appointed counsel to represent Stewart at the evidentiary hearing.[2]  However, the remaining claims are conclusively refuted by the record and are denied without an evidentiary hearing as follows.

### C. Grounds for Relief

Stewart's amended motion states the following claims for relief:

1) The deadly spread of the COVID-19 virus has significantly hindered his ability to properly litigate his motion, so he seeks equitable tolling for claims raised in his amended motion;

2) The Supreme Court decision in *United States v. Davis*, 139 S. Ct. 2319 (2019) invalidates his convictions under Title 18, United States Code, Sections 924(c) and 924(j). Within this argument, Stewart also alleges that "Drug Type is an element of § 924(c)(1)(A)/(j) that must be proven" and that counsel was ineffective for not raising this issue on appeal. Stewart contends that *Apprendi v. United States*, 530 U.S. 466 (2000) supports his argument that drug type and quantity must be proven as an element of conspiracy;

---

[2] That hearing is currently set for November 21, 2023.  A separate Memorandum and Order addressing those two claims will issue after the evidentiary hearing.

3) Trial and appellate counsel, John Stobbs, was ineffective for failing to hold the government to its burden of proof.  Stewart adds in his amended motion that Stobbs should have been removed from representing him on appeal due to a conflict of interest;

4) The prosecution "recruited" Kenneth Betts to "target" Stewart. Trial counsel was ineffective for failing to file a pretrial motion to suppress pursuant to *Kuhlmann v. Wilson*, 477 U.S. 436 (1986), and moving to suppress the testimony of Government witness Kenneth Betts. Stewart adds in his amended motion that trial counsel was ineffective because  he "did not question the jail Lt., on the procedural steps taken" to place Kenneth Betts in his housing unit;

5) The "District Court erred and abused its discretion by (a) failing to treat type and quantity as an element of the drug trafficking conspiracy;" (b) "improperly imposing a mandatory minimum sentence without a finding that he specifically, rather than the conspiracy, was accountable for a quantity of drugs;" (c) "circumventing the prosecution's burden at sentencing with the Probation Officer (PO's) inaccuracy Presentencing Investigation (PSI) report on drug quantity and unsupported opinion to prove quantity of drugs;" and (d) trial counsel's representation was ineffective in this regard;

6) The Probation Officer and Prosecution created a "constructive amendment" to the indictment and the indictment was defective for failing to "state a critical element (drug quantity);"

7) 18 U.S.C. § 924(c)(1)(A) and 21 U.S.C. § 846 are overly broad and, as a result, the latter cannot serve as a predicate offense to the former;

8) Trial counsel was ineffective in not making the government prove the type of controlled substance beyond a reasonable doubt;

9) (called Ground Eight in the amended motion) Trial counsel was ineffective in not calling "alibi and credibility" witnesses Shaunta Busby and Beverly Fortune, who were ready and able to testify on behalf of Stewart, and trial counsel deceived and coerced him into not testifying, based in part on the expectation that his alibi and credibility witnesses would be "his voice on the witness stand;"

10) Stewart was denied his Sixth Amendment right to cross-examine and confront witnesses because law enforcement officers were allowed to testify

about hearsay regarding Mr. Brinson, Ricky Stewart, and drug type, and counsel was ineffective for failing to object to hearsay testimony and raise the issue on appeal;[3]

11) Trial counsel was ineffective for: (a) failing to provide Stewart with the discovery in his case; (b) failing to play the 911 recordings of witnesses to the jury during trial; (c) failing to obtain hospital records that would have undermined the testimony of government witness Brandon Trendley by showing that Petitioner was shot on October 27, 2011; (d) failing to file pretrial motions relating to hearsay testimony; and (e) failing to call a witness to testify that there no back door to 5129 Northland; and

12) Appellate counsel John Stobbs was ineffective for failing to raise the aforementioned *Apprendi* argument, and the matters raised in his motion, on direct appeal. Stewart asserts that appellate counsel failed to communicate with him about the issues on appeal.

### D. Standard for § 2255 Relief

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir.2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may

---

[3] Although it is not pleaded as such, in his traverse Stewart characterizes this as an ineffective assistance of counsel claim.  ECF 44 at 30.  Because the government also addresses this claim as one of ineffective assistance of counsel, I will do the same.

seek postconviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."). A § 2255 motion "is intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *United States v. Wilson,* 997 F.2d 429, 431 (8th Cir.1993) (cleaned up).

## Ground One is Not Cognizable in a Habeas Proceeding

As set forth above, Ground One is denied as it is not a cognizable habeas claim but instead an attempt to apply equitable tolling to his amended motion.

## Grounds Two, Five, and Six are Procedurally Defaulted and Meritless Because *Davis* and *Apprendi* Do Not Apply

A § 2255 motion cannot substitute as an appeal and "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States,* 8 F.3d 1313, 1314 (8th Cir. 1993) (cleaned up). Stewart's failure to raise Grounds Two, Five and Six to the Eighth Circuit on direct appeal constitutes a procedural default of these claims. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States,* 523 U.S. 614, 622 (1998) (cleaned up). Even if Stewart could avoid the procedural default of these claims, however, they fail on their merits.

In Ground Two, Stewart asserts that the United States Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), invalidates his convictions under 18 U.S.C. §§ 924(c) and 924(j).  In *Davis*, the Supreme Court held that 18 U.S.C. § 924(c)'s "residual clause," specifically § 924(c)(3)(B), as it relates to defining "crime of violence," is unconstitutionally vague . *Id.* at 2336. However, Stewart was not charged or convicted under this subsection; his offenses related to a drug trafficking crime.  The plain language of § 924(c)(2) states that, "For purposes of this subsection, the term 'drug trafficking crime,' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." Counts III and IV of the superseding indictment charge that Stewart possessed and used a firearm resulting in death, constituting murder, in furtherance of conspiracy to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 846 as charged in Count I of the indictment. The Court instructed the jury accordingly.

Because the predicate for Stewart's convictions was a drug trafficking crime, the *Davis* decision does not apply to Stewart's case.  Stewart was convicted under 18 U.S.C. §§ 924(c)(1)(A) and 924(j) and these sections were not addressed by the *Davis* opinion.  Ground Two of Stewart's motion is denied as meritless. *See Corredor v. United States*, 2020 WL 5850960, at *2 (W.D. Mo. Oct. 10, 2020) (denying 2255 relief under *Davis* where movant was convicted for his possession

of a firearm in relation to a drug trafficking crime, not a crime of violence);

*Carter v. United States*, Case No. 4:20CV245 HEA, 2020 WL 758954, at *2-3

(E.D. Mo. Feb 14, 2020) (*Davis* inapplicable to movant's § 2255 petition because

he pled guilty to a drug trafficking crime, not a crime of violence); *Higgins v.*

*United States*, Case No. 4:19CV02863 RWS, 2020 WL 587690, at *4 (E.D. Mo.

Feb. 6, 2020).

     Grounds Two, Five, and Six all relate to Stewart's argument that drug type

and quantity are elements of 21 U.S.C. §§ 846 and 841(a)(1) that must be proven.

He also argues that "drug type is an element of § 924(c)(1)(A)/(j) that must be

proven." He contends that counsel, the Court, and the probation officer all erred

by not demanding that the government prove those elements beyond a reasonable

doubt to a jury and that counsel was ineffective for not raising these issues on

appeal. Stewart relies on *Apprendi v. United States*, 530 U.S. 466 (2000) to support

these arguments.

     Under *Apprendi*, "other than the fact of a prior conviction, any fact that

increases the penalty for a crime *beyond the prescribed statutory maximum* must

be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530

U.S. at 489 (emphasis added). Here, Count I of the superseding indictment did not

allege a mandatory minimum or a higher statutory maximum based upon drug

quantity, but instead alleged a violation of 21 U.S.C. §§ 846, 841(a)(1),[4]

punishable under § 841(b)(1)(C).  ECF 54 in 4:15 CR 441 CDP.  I did not increase

the statutory maximum punishment in relation to Count I at sentencing.  Instead, I

sentenced Stewart to, but not beyond, the statutory maximum of twenty years on

Count I.  Nor was Stewart sentenced to a mandatory minimum in relation to Count

I.  *See Alleyne v. United States*, 570 U.S. 99, 103 (2013) (mandatory minimum

sentences increase the penalty for crimes and thus are elements that must be

submitted to the jury; judicial fact finding is not sufficient).  Therefore, *Apprendi*'s

holding does not apply to Stewart's conviction on Count I.[5]  *See United States v.*

*Spofera*, 299 F.3d 725, 728-29 (8th Cir. 2002) (21 U.S.C. §§ 841 and 846 are not

facially unconstitutional in light of *Apprendi* and sentence is valid "so long as there

is no *Apprendi* violation in the course of its implementation") (cleaned up); *United*

*States v. Vaca*, 289 F.3d 1046, 1049 (8th Cir. 2002) (21 U.S.C. §§ 841 and 846 are

not facially unconstitutional because they do not require the government to charge

---

[4] 21 U.S.C. § 841(a) enumerates two ways to commit a single offense: either by distribution or by possession with intent to distribute. 21 U.S.C. § 846 makes it illegal to conspire to commit any drug offense.

[5] I explained this to Stewart at sentencing: "You mentioned in your statement earlier that you thought the drug quantity had to be proved and – pleaded and proven to the jury, but that's not true in this case because this case, you're only – there's no mandatory minimum sentence on the drug case. There's only a maximum of 20 years' imprisonment, and the *Apprendi* and other cases you were citing apply when there's a mandatory minimum sentence." (ECF 307 at 30 in 4:15 CR 441 CDP).

and prove drug type and quantity, and sentences do not violate *Apprendi* where they do not exceed the statutory maximum sentence).

Moreover, because Stewart was charged with conspiracy to distribute and possess with intent to distribute cocaine and heroin under 21 U.S.C. §§ 846 and 841, a specific quantity is not an element of the crime charged. *See United States v. Schrader*, No. CR 14-50049-01 KES, 2014 WL 3752360, at *3 (D.S.D. July 30, 2014) (by charging defendant with conspiracy punishable under 21 U.S.C. § 841(b)(1)(C), which carries no mandatory minimum sentence and a maximum sentence of twenty years in prison, the government has alleged an offense where it does not need to prove a minimum quantity) (citing *United States v. Holt*, 149 F.3d 760, 763 (8th Cir. 1998) (under § 841, "[t]he drug quantity is not an essential element of that offense.")).

To convict a defendant of 21 U.S.C. § 841(a), or of conspiracy in violation of § 846, "[t]he government is not required to prove that the defendant actually knew the exact nature of the substance with which he was dealing." *United States v. Sheppard*, 219 F.3d 766, 769, 770 (8th Cir. 2000) (cleaned up).

Here, there was ample evidence the conspiracy involved possession with intent to distribute heroin, which was alleged in the conjunctive with cocaine as an object of the conspiracy in the indictment. ECF 54 in 4:15 CR 441 CDP. That evidence consisted of testimony from witnesses including DEA Agent James

Stroop (who explained the nature of the White drug conspiracy), Brandon Trendley (a customer of Stewart's who purchased heroin from Stewart on a daily basis), Darryl Clemons (a high-level member of the White drug conspiracy who testified that Stewart was a shooter for the organization and was sometimes paid in heroin), DEA Senior Forensic Chemist Tim Anderson (who testified that the substances seized in connection with the investigation were heroin), and police officer Robert Singh (who observed Stewart engaging in activities consistent with drug distribution at 5129 Northland and later seized firearms and heroin from the residence), among others.  ECF 265, 266, 268, and 277 in 4:15 CR 441 CDP.

The White drug trafficking conspiracy, of which Stewart was a member, utilized a hydraulic heroin press to process large distribution amounts of heroin, and investigation related to the heroin press eventually led to the seizure of more than 500 grams of heroin on February 19, 2010. The parties stipulated to the laboratory analysis of the substance.  ECF 277 at 198-201, ECF 268 at 18-19, exhibits 22, 114 in 4:15 CR 441 CDP.  Anderson conducted forensic chemical analysis that revealed the plates for the heroin press contained heroin residue.  ECF 265 at 89-97, exhibits 30C-1 through 30C- 8 in 4:15 CR 441 CDP.  Anderson also examined other items seized during the investigation of the conspiracy that revealed the presence of heroin.   ECF 265 at 89-97 in 4:15 CR 441 CDP.  There

was also uncontradicted evidence that the heroin press was utilized as part of the conspiracy.

As part of the investigation, DEA caused Illinois police to conduct a traffic stop of Charles Peoples as he was returning from Chicago to St. Louis with what was determined to be 298.6 grams of heroin.  ECF 277 at 185-194, exhibit 21H in 4:15 CR 441 CDP.

As I told Stewart at sentencing, "I heard the evidence, and there was more than ample evidence from which the jury could convict you, and there was also more than ample evidence to find the drug quantity that's listed in the Presentence Report from the evidence presented at trial."  ECF 307 at 30 in 4:15 CR 441 CDP. Because the evidence was not contradicted or unclear and the indictment charged heroin and cocaine, the jury was not required to decide which drug was involved in the multi-drug conspiracy.  *See United States v. Watts*, 950 F.2d 508, 514-15 (8th Cir. 1991) (because defendants were indicted with an "and" not an "or" indictment, the jury did not need to decide between the different drugs charged in the conspiracy; where evidence at trial is not contradicted or unclear, the court did not have to use a special verdict form directing the jury); *United States v. Page-Bey*, 960 F.2d 724, 727-28 (8th Cir. 1992).

Stewart also complains that the Court could not attribute the conspiracy's drug quantity to him because the government failed to plead drug quantity and

prove that "he, specifically, rather than the conspiracy" was responsible for the quantity of drugs. According to Stewart, both the Court and the probation office circumvented the prosecutor's burden of proof by considering the amount of drugs attributable to him at sentencing.

Here, I considered the record evidence and relevant 18 U.S.C. § 3553(a) factors at sentencing and sentenced Stewart within the applicable statutory ranges for each offense. It is well established that a quantity of drugs may be attributed to a defendant as relevant conduct at sentencing if the court finds by a preponderance of a evidence that the transaction or activity was part of the same course of conduct or scheme and either known to the defendant or reasonably foreseeable to him. *United States v. Waldrip*, 805 F. App'x 442, 443 (8th Cir. 2020) (citing *United States v. Brown*, 148 F.3d 1003, 1008 (8th Cir. 1998)). "A defendant is liable for the actions of a conspiracy that are reasonably foreseeable to him, unless he affirmatively withdraws from the conspiracy." *United States v. Polk*, 715 F.2d 238, 247 (8th Cir. 2013) (quoting *United States v. Marquez*, 605 F.3d 604, 611 (8th Cir. 2011)). The evidence at trial established that Stewart was a shooter and heroin dealer for the large-scale, long-term White drug trafficking conspiracy. Not only did I find there was more than ample evidence to find the drug quantity attributed to Stewart in the PSR, the actions of the conspiracy were reasonably foreseeable to

him and his conduct furthered the activities of the conspiracy by engaging in violence and distributing heroin.

As I explained, "This is a horrible case. The evidence was extensive and horrendous. There's no doubt in my mind, having heard the evidence, that the Defendant is guilty of the crimes he's charged with, and I also believe these are the correct guidelines calculations."  ECF 307 at 35 in 4:15 CR 441 CDP.

To the extent Stewart's arguments can be read to suggest that the government was required to prove that he had specific knowledge of the drug quantity or type, "the government is not required to prove a defendant's knowledge of the drug quantity or type for him to be convicted under §§ 841(a) and 841(b)." *United States v. Maxwell*, 61 F.4th 549, 558 (8th Cir. 2023) (citing *United States v. Sheppard*, 219 F.3d 766, 768 n.2 (8th Cir. 2000); *United States v. Gamez-Gonzalez*, 319 F.3d 695, 699-700 (5th Cir. 2003); *see also United States v. Ramos*, 814 F.3d 910, 915 (8th Cir. 2016)).  Additionally, "to obtain a conviction and a particular sentence for conspiracy to distribute controlled substances under § 846, the government must prove only that the defendant's mental state was the same as if the defendant had been charged with the underlying offense." *Maxwell*, 61 F.4th at 558 (cleaned up).  Thus, the government did not need to prove that Stewart had knowledge of the drug quantity or type to convict him of conspiracy to distribute cocaine and heroin. *Id.* (citing *United States v. Carrera*, 259 F.3d 818, 830 (7th

Cir. 2001) (holding under *Apprendi* that to convict a defendant of violating § 846 the jury need not find that the defendant had knowledge of the drug quantity and type)).

Stewart was properly sentenced in accordance with the law and the evidence, and neither the Court nor the probation office worked a "constructive amendment" to the indictment or assisted the government in "circumventing its burden of proof" by determining the drug quantity involved in his drug conspiracy for sentencing purposes on Count I of the superseding indictment.

Finally, Stewart's argument that drug type is an element of § 924(c)(1)(A) and (j) which must be proven is summarily rejected based upon the plain language of the statute, as these subsections do not require proof of the specific drug alleged in the predicate drug trafficking crime.[6]

For these reasons, Grounds Two, Five, and Six are denied.

## **Grounds Three, Eight And Twelve Are Meritless**

In Ground Three, Stewart claims generally that counsel was ineffective for "failing to hold the government to its burden of proof." In Ground Eight, Stewart argues that trial counsel was ineffective in not making the government prove the

---

[6] To the extent Ground Two asserts that counsel was ineffective for failing to raise this argument on appeal, the claim is denied as counsel is not ineffective for failing to raise a meritless issue on appeal. *Meyer v. Sargent*, 854 F.2d 1110, 1115-16 (8th Cir. 1988) (no prejudice when appellate counsel does not raise meritless issues on appeal).

type of controlled substance beyond a reasonable doubt.   In Ground Twelve, Stewart argues that counsel was ineffective for failing to raise his *Apprendi* argument on appeal.

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel.  *Strickland v. Washington,* 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, Stewart must prove two elements.  First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  When evaluating performance, "judicial scrutiny . . . must be highly deferential."  *Id.* at 689.  The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error.  *Id.*  Second, Stewart "must show that the deficient performance prejudiced the defense."  *Id.* at 687.  This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The court need not address both components if Stewart makes an insufficient showing on one of the prongs. *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir. 1995).

The lack of specificity as to how counsel failed to hold the government to its burden of proof or how Stewart was prejudiced a result is fatal to Ground Three.

*Dyer v. United States*, 972 F.2d 353 (8th Cir. 1992).  Nor does Stewart explain how counsel allegedly failed to communicate with him about his appeal in Ground Twelve, or any resulting prejudice.  General and conclusory allegations are insufficient to support a claim for ineffective assistance of counsel.  *See Hill v. Lockhart,* 474 U.S. 52, 57–59 (1985); *Estes v. United States,* 883 F.2d 645, 647 (8th Cir.1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence); *United States v. Goodman,* 590 F.2d 705, 711 (8th Cir.1979) (holding that conclusory allegations unsupported by specific facts may be summarily dismissed).[7]   I apply *Strickland* to all ineffective assistance of counsel claims raised by Stewart.

To the extent Grounds Three, Eight and Twelve allege that counsel was ineffective for failing to raise the arguments denied above relating to *Apprendi* and the proof of drug quantity and type at trial or on appeal, they are denied as meritless as "counsel's failure to advance a meritless argument cannot constitute ineffective assistance."  *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994); *Meyer v. Sargent*, 854 F.2d 1110, 1115-16 (8th Cir. 1988) (no prejudice when appellate counsel does not raise meritless issues on appeal).  Nor was counsel ineffective for winnowing out these meritless arguments even if Stewart

---

[7] Moreover, trial counsel *did* hold the government accountable to its burden of proof by mounting a vigorous defense and securing an acquittal on Count II of the indictment.

wanted them raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (no constitutional right to compel counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points).

As previously discussed, Ground Three of the amended motion is denied as untimely to the extent it asserts a claim alleging that trial counsel was ineffective due to a conflict of interest, as it does not relate back to his timely filed 2255 motion.

In his traverse with respect to Ground Twelve, Stewart argues that he is alleging an ineffective assistance claim based on "cumulative error." ECF 44 at 36. Even if the claim is construed as such, it would still be denied as "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own." *Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir. 1991) (quoting *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990)); *see also Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006). As such, Stewart's broad allegations of cumulative error do not state a cognizable claim under *Strickland*. *See Forrest v. Steele*, 764 F.3d 848, 860 (8th Cir. 2014) (Supreme Court precedent does not obligate courts "to bundle individual claims of attorney error and determine whether the body of these alleged faults, en masse, overcome *Strickland*'s presumption of reasonableness"); *see also Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that

are not unconstitutional individually cannot be added together to create a constitutional violation.  Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." (cleaned up).  No Supreme Court decision "purport[s] to aggregate each discrete and potentially unrelated claim of ineffectiveness into a single performance inquiry."  *Forrest*, 764 F.3d at 861.  Rather, "'[a] fair assessment of attorney performance requires that every effort be made . . . to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  *Id.* (quoting *Strickland*, 466 at 689).

Because Stewart has not demonstrated that counsel was ineffective for failing to raise meritless arguments relating to *Apprendi* or drug quantity or type, all ineffective assistance of counsel claims based on these issues fail.  Grounds Three, Eight, and Twelve are denied.

### **Ground Four is Denied as Meritless**

In Ground Four, Stewart alleges that the prosecution "deliberately . . . recruited Kenneth Betts to not only specifically target Stewart while being housed at Warren County Jail, to sought [sic] incriminating statements from him."  ECF 1 at 15.

The government called Betts, an inmate incarcerated with Stewart during his pretrial detention at the Warren County Jail, to testify at trial.  Betts testified that

he and Stewart were placed in the same housing unit at the jail and that Stewart frequently discussed his case with Betts.  ECF 278 at 198 in 4:15 CR 441 CDP. Among other things, Stewart told Betts that he and two others went to Stewart's residence after one of the murders and that Stewart was confident that a female witness to the murder could not identify him.  ECF 278 at 207-209 in 4:15 CR 441 CDP.  Stewart also told Betts that if codefendant Wilson were to talk, that "he would be taken care of."  Stewart further explained that, "he was an O.G. and he called all the shots."[8]  ECF 278 at 213 in 4:15 CR 441 CDP.  Video surveillance of Betts and Stewart showed that it was Stewart who approached Betts.  ECF 278 at 202-204 in 4:15 CR 441 CDP.

Stewart alleges that counsel was ineffective for failing to file a pretrial motion to suppress Betts's testimony pursuant to *Kuhlmann v. Wilson*, 477 U.S. 436 (1986).  In *Kuhlman*, the Supreme Court held that the Sixth Amendment does not forbid admission of an accused's statements to a jailhouse informant who is placed near the accused but makes no effort to stimulate conversations about the crime charged.  *Id.* at 459-460.

A claim that Betts's testimony should have been suppressed under *Kuhlman* is procedurally defaulted as it was not raised at trial or on appeal.   In addition, it is

---

[8] Betts said O.G. means "Original Gangster" because "like he's the boss."  ECF 278 at 214 in 4:15 CR 441 CDP.

meritless as Betts testified that he did not intentionally provoke Stewart into speaking about the case because Stewart approached him and initiated conversations.  ECF 278 at 206, 230 in 4:15 CR 441 CDP.  Betts's account of the events is corroborated by video surveillance, which shows Stewart approaching Betts. ECF 278 at 202-204, 211 in 4:15 CR 441 CDP.  Stewart did the talking, and Betts listened.  ECF 278 at 206, 235 in 4:15 CR 441 CDP.  Betts believed that Stewart probably chose to speak with him because he was one of the most intelligent detainees confined with Stewart.  ECF 278 at 229 in 4:15 CR 441 CDP.

Nor is there evidence that Betts was working under the direction of the government while at the Warren County Jail.  ECF 278 at 205 in 4:15 CR 441 CDP.  In fact, after Betts told the government what Stewart said, he was moved from the Warren County Jail instead of being put back with Stewart.  ECF 278 at 215 in 4:15 CR 441 CDP.

Under these circumstances, even if a motion to suppress had been filed under *Kuhlman*, it would have been denied as meritless.  As counsel cannot be ineffective for failing to make a meritless argument, Ground Four is denied.

The claim asserted in Ground Four of the amended motion that counsel was ineffective for failing to question jail staff about the "procedural steps taken" to place Betts in Stewart's housing unit is denied as untimely for the reasons previously stated.

25

## **Ground Seven is Procedurally Defaulted and Meritless**

In Ground Seven Stewart argues that 18 U.S.C. § 924(c)(1)(A) and 21 U.S.C. § 846 are overly broad, and therefore, the latter cannot serve as a predicate offense for the former.  This argument should have been raised on direct appeal and is therefore procedurally defaulted.

It is also meritless.  18 U.S.C. § 924(c)(2) states that "the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ."  Stewart was convicted under § 846 of the Controlled Substances Act, which plainly meets this definition.

Moreover, a single conspiracy to violate § 846 may serve as a predicate for multiple murders charged in violation of § 18 U.S.C. 924(c) and (j).  *See United States v. Temple*, 261 F. Supp. 3d 971, 976-980 (E.D. Mo. 2017) (citing *United States v. Hoover*, 543 F.3d 448, 455 (8th Cir. 2000)).

To the extent Ground Seven is construed as an attack on § 846 because it does not require an overt act, that argument is procedurally barred and meritless. The Eighth Circuit has held that the Controlled Substances Act does not require proof of an overt act in addition to proof of a conspiracy.  *United States v. Covos*, 872 F.2d 805, 810 (8th Cir. 1989).

Ground Seven is denied.

## Ground Ten is Procedurally Defaulted and Meritless

In Ground Ten, Stewart alleges that he was denied his Sixth Amendment right to cross-examine and confront witnesses[9] because law enforcement officers were allowed to testify about hearsay regarding Major Brinson, Ricky Stewart, and drug type. These claims were not raised on direct appeal and are therefore procedurally defaulted. They are also meritless as the evidence was properly admitted.

On March 18, 2010, St. Louis Metropolitan Police Officer Matt Frichtl responded to 5129 Northland due to an emergency call related to a reported shooting. ECF 262 at 197, 200-201 in 4:15 CR 441 CDP. Upon arriving at the scene, Frichtl encountered Donald Stewart's brother, Ricky Stewart, crawling from the residence in a shocked state. ECF 262 at 200 in 4:15 CR 441 CDP. Ricky Stewart excitedly told Frichtl that Donald Stewart accused Ricky of stealing heroin and marijuana from Donald, produced a handgun, struck Ricky several times with it, and then shot at Ricky as he fled the residence. ECF 262 at 200-01 in 4:15 CR 441 CDP. Frichtl observed that Ricky Stewart's pants were ripped and he was bleeding from the leg. ECF 262 at 203 in 4:15 CR 441 CDP. Frichtl also observed

---

[9] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

lacerations on Ricky Stewart's head. ECF 262 at 203 in 4:15 CR 441 CDP. Ricky did not appear to be shot. ECF 262 at 203 in 4:15 CR 441 CDP. When Frichtl approached the residence, he observed shattered glass and spent 9 mm cartridge casings. ECF 262 at 204-205 in 4:15 CR 441 CDP.

After repeated knocking, Frichtl and other officers forcibly entered the residence and encountered Donald Stewart, placing him under arrest. ECF 262 at 206-07 in 4:15 CR 441 CDP. Officers observed live ammunition on the floor of the main room of the residence and a sawed off shotgun on the floor of the kitchen. ECF 262 at 209 in 4:15 CR 441 CDP. Officers contacted the neighbor of the adjoining unit who shared a common basement with Stewart. ECF 262 at 210 in 4:15 CR 441 CDP. The neighbor consented to a search of the common basement and officers searched it, opening the locked area utilizing a key from Stewart's residence. ECF 262 at 212 in 4:15 CR 441 CDP. The search revealed 7.62x39mm semi-automatic rifles, 7.62x39mm ammunition, and 7.62x39mm spent shell casings as well as a 9 mm pistol hidden in the dryer. ECF 262 at 211-14 in 4:15CR441 CDP.

Prior to trial, counsel filed a motion in limine to exclude or limit this evidence. ECF 143 in 4:15 CR 441 CDP. After oral argument, I denied the motion. ECF 177 in 4:15 CR 441 CDP. Prior to the admission of the evidence at trial, counsel again objected to the admission of the statements of Ricky Stewart on

hearsay and confrontation grounds.  After hearing the arguments of the parties, I overruled counsel's objection and admitted evidence of Ricky Stewart's statements as excited utterances pursuant to Federal Rule of Evidence 803.  ECF 262 at 185-92 in 4:15 CR 441 CDP.

Before the submission of this evidence during the testimony of Officer Frichtl, counsel again renewed his objection that the evidence of this shooting was impermissible 404(b) evidence.  ECF 262 at 194 in 4:15 CR 441 CDP.  I overruled the objection, finding the shooting was in furtherance of the charged conspiracy. ECF 262 at 194 in 4:15 CR 441 CDP.  The Eighth Circuit later held that the admission of multiple shootings, and the assault of Ricky Stewart, was admissible as intrinsic to the conspiracy.  *United States v. Stewart*, 777 F. App'x 849 (8th Cir. 2019) ("The evidence that Stewart accused his brother of stealing drugs and shot at him at Stewart's residence, a residence featured prominently in the drug trafficking and where firearms and ammunition were later found, was evidence tending to show that Stewart possessed drugs and used firearms to protect drugs that were part of the charged conspiracy."); ECF 317 at 2 in 4:15 CR 441 CDP.

I properly admitted portions of Ricky Stewart's statements as excited utterances pursuant to Federal Rule of Evidence 803(2).  *See United States v. Graves*, 756 F.3d 602, 695 (8th Cir. 2014) (quoting *United States v. Clemmons*, 461 F.3d 1057, 1061 (8th Cir. 2006) (To decide whether declarant remains "under

the stress of excitement" caused by the event, courts consider: "[1] the lapse of time between the startling event and the statement, [2] whether the statement was made in response to an inquiry, [3] the age of the declarant, [4] the physical and mental condition of the declarant, [5] the characteristics of the event, and [6] the subject matter of the statement.")).

To the extent Stewart is arguing that counsel was ineffective for failing to object to the introduction of this evidence at trial, the claim is conclusively refuted by the record as counsel sought numerous times, albeit unsuccessfully, to exclude this evidence. *See United States v. Portz*, 2023 WL 3585930, at *3 (D. Minn. May 22, 2023) (no ineffective assistance of counsel where counsel raised argument but it was rejected by court).  Because the evidence was properly admitted, counsel was also not ineffective for failing to raise the hearsay issue on appeal. *See Rodriguez*, 17 F.3d at 226.

Frichtl also offered testimony regarding his conversations with Major Brinson, the resident of the building who gave officers permission to search the basement he shared with Stewart.  ECF 262 at 201-11 in 4:15 CR 441 CDP.  To the extent Frichtl, Officer Singh, or any other witness testified to Brinson's consent to search the residence, this was not hearsay because it was not offered for the truth of the matter asserted, but to show proof of effect on the listener and to explain the officers' subsequent conduct.  Where

an out-of-court statement is offered not for the truth of the matter asserted,

but rather "to explain the reasons for or propriety of a police investigation,"

then it is not hearsay and does not implicate the Confrontation Clause.

*United States v. Shores*, 700 F.3d 366, 374 (8th Cir. 2012) (citing *United*

*States v. Malik*, 345 F.3d 999, 1001 (8th Cir. 2003)); *United States v. Brown*,

560 F.3d 754, 764 (8th Cir. 2009) (out of court statement is not hearsay when

offered to explain why an officer conducted an investigation in a certain

way).  Therefore, this testimony was properly admitted and counsel's failure

to make a meritless hearsay objection, or raise the issue on appeal, cannot

constitute ineffective assistance of counsel as a matter of law.  *See*

*Rodriguez*, 17 F.3d at 226.

Finally, Stewart argues that evidence of laboratory results regarding drug

type was inadmissible under *Crawford v. Washington*, 541 U.S. 36 (2004), and

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).  Under these cases, in the

absence of witness unavailability the government may not submit affidavits or

certificates of analysis regarding the forensic analysis performed on seized drugs as

evidence at trial in lieu of the analyst's live testimony at trial without running afoul

of the Confrontation Clause.  *See id.* at  309-12.  These cases are inapposite here

where DEA Senior Forensic Chemist Anderson testified at trial that he tested the

drugs seized in the investigation and they were heroin.  ECF 265 at 90-97 in 4:15

CR 441 CDP.   Because there was no Confrontation Clause violation, counsel was not ineffective for failing to raise this meritless argument at trial or on appeal.  *See Rodriguez*, 17 F.3d at 226.

Ground Ten is Denied.

### **Grounds Nine (Eight in the Amended Motion) and Eleven**

The Court has set Grounds Nine and Eleven only for an evidentiary hearing and will issue a ruling on the merits of the two remaining ineffective assistance of counsel claims following the evidentiary hearing.  However, the Court reminds Stewart that he is precluded from making any argument respecting counsel's failure to call a witness to testify that there was not a back door to 5129 Northland (Ground 11), as that claim has been denied as untimely.  Moreover, any arguments regarding counsel's alleged ineffectiveness will not be examined in a vacuum. Instead, Stewart must demonstrate that any alleged deficiencies were prejudicial as defined under *Strickland*.  This requires more than simply pointing out assorted pages from the voluminous discovery in this case and claiming that he did not see a particular page.  That is not the purpose of the evidentiary hearing in this case, and appointed counsel is not obligated to engage in such an undertaking.  Instead, Stewart must focus on alleged errors of counsel that were outcome determinative. This hearing is limited to the issues set out in Grounds Nine (called Ground Eight

in the Amended Motion) and Eleven as clarified above and is not an opportunity to retry this case.

Accordingly,

**IT IS HEREBY ORDERED** that movant's motions to amend [21, 23] are granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that Grounds One through Eight (not Ground Eight in the amended motion) and Grounds Ten and Twelve of the Motion and Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 [1, 24] are denied.  Grounds Nine (called Ground Eight in the Amended Motion) and Eleven remain set for hearing on November 21, 2023, with the hearing to resume on December 13, 2023, if necessary for the availability of a witness.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of October, 2023.