UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DONALD STEWART, )
 )
 Petitioner, )
 )
v. ) No. 4:20 CV 1880 CDP
 )
UNITED STATES OF AMERICA, )
 )
 Respondent. )

## <u>MEMORANDUM AND ORDER</u>

This matter is before me on the Motion and Amended Motion to Vacate, Set

Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 filed by movant Donald

Stewart.  On October 30, 2023, I denied Grounds One through Eight (not Ground

Eight in the amended motion) and Grounds Ten and Twelve of the Motion and

Amended Motion.  ECF 75.  I held an evidentiary hearing on the remaining

grounds asserted in the motion: Grounds Nine (called Ground Eight in the

Amended Motion) and Eleven.  The hearing was held on November 21, 2023,

December 13, 2023, and February 2, 2024.  Although Stewart was appointed

counsel to represent him at the evidentiary hearing, he elected to represent himself,

with appointed counsel remaining as standby counsel only.[1]  ECF 78.  Six

---

[1] The Court also held a hearing on Stewart's request to represent himself on November 15, 2023.

witnesses, including Stewart, testified over the course of the hearing, and documents were subpoenaed by, and produced to, Stewart.[2]

During the hearing about whether Stewart should be permitted to proceed without the assistance of appointed counsel, Stewart indicated that he wanted to present evidence about claims that were not previously raised in his motion or amended motion.  The government opposed amendment as untimely.[3]  I agreed to hear evidence in support of the newly asserted grounds but reserved ruling on their timeliness until after the hearing was concluded.  Having fully considered the issue, I conclude that amendment is untimely and deny leave to amend.  The issues, even if they were timely raised, are also meritless and do not entitle Stewart to relief.

As for the claims that were properly before the Court, after hearing the testimony of the witnesses I conclude that Stewart did not receive ineffective of counsel.  Stewart was represented by two highly experienced criminal defense lawyers whose skilled representation of Stewart managed to secure an acquittal for him on one of the charged murders.  I find Stewart's assertions regarding their

---

[2] The other witnesses were trial counsel John Stobbs and Daniel Schattnik, defense investigator Daniel Grothaus, Stewart's daughter Shaunta Busbey, and Stewart's friend Beverly Fortune.

[3] The arguments were made orally, as the Court did not require additional briefing.

alleged failures to be without credence, as I fully credit the testimony of the lawyers as consistent with the evidence at trial and supporting documentation.

For the reasons set out below, leave to amend is denied and the ineffective assistance of trial counsel claims asserted in Grounds Nine (called Ground Eight in the Amended Motion) and Eleven are denied.

## Discussion

### A. Oral Motion to Amend

Despite being told that "this hearing is limited to the issues set out in Grounds Nine (called Ground Eight in the Amended Motion) and Eleven as clarified above and is not an opportunity to retry this case," ECF 75, Stewart insisted on raising issues that were not part of his original or amended § 2255 motions.  Those issues were: trial counsel's alleged failure to call another alibi witness (Angelica Brinson) not previously identified; and, issues surrounding the murder of Darrion Williams, Jr., one of the murders for which Stewart was convicted.

Jerome Lewis testified at trial that he witnessed Stewart shoot Williams, then after Williams fell down Christopher Spates and Terrance Wilson ran up and "finished shooting him up."  Criminal Case 4:15CR441 CDP, Trial Tr. Vol. V at 239-40.  Lewis never testified at trial about what type of gun Stewart used to shoot Williams.   At trial, firearms examiner Major Eric Larson testified that three 9 mm

bullet cartridge casings recovered from the Williams's crime scene were fired from the same gun, another 9 mm cartridge casing recovered from the scene was fired from a different gun, and it was impossible to determine whether another 9 mm cartridge casing recovered at the scene was fired from yet another gun.  Criminal Case 4:15CR441 CDP, Trial Tr. Vol. VII at 22-28.  Larson was unable to draw any conclusions about the number or type of firearms used in the Williams's murder based upon the bullet fragments recovered by the medical examiner during the post-mortem examination of Williams.

In lieu of the medical examiner testifying live at trial about Williams's death, the parties presented the findings of the medical examiner by Stipulation instead.  This Stipulation was entered at trial as Government's Exhibit 113 and is signed by Stewart.  Gov't Hearing Ex. 16-4.  Before publishing the Stipulation to the jury, I explained that Stipulations "are agreements between the parties where they have agreed that these facts are true.  You should accept these as facts that have been proven as if there were someone here testifying to them."  Criminal Case 4:15CR441 CDP, Trial Tr. Vol. VIII at 16-18.[4]  The Stipulation states that Williams sustained multiple gunshot wounds on July 23, 2010, and he remained in

---

[4] In addition to signing the Stipulation, Stewart was in the courtroom when I explained to the jury the meaning of a Stipulation.  Any argument now that he did not understand what a Stipulation meant is conclusively refuted by the record and rejected as meritless.

a coma until he succumbed to his injuries on October 27, 2010.  The medical

examiner determined Williams's cause of death to be a gunshot wound to the head,

and the manner of death was ruled a homicide.  The medical examiner also

observed additional serious gunshot wounds which could be a contributing cause

of death.  Williams sustained gunshot wounds to the left back shoulder area, the

upper body, the right arm, and the right buttock/thigh area.[5]

According to Stewart, the ballistics evidence and medical examiner's report

from Williams's autopsy conflict with Jerome Lewis's pretrial description[6] of the

murder, in which Lewis apparently indicated that Stewart used a .45 caliber

weapon to shoot Williams.[7]  According to Stewart, he was never provided with any

---

[5] Because the medical examiner's report refers to the bullets found in these bullet wounds as "old" bullets, Stewart apparently believes this proves that Williams was not actually shot multiple times in July of 2010.  This theory is conclusively refuted by the evidence of record, including the police incident report which indicates that Williams was transported to Barnes Hospital and the attending physician advised police officers that Williams "received approximately five gunshot wounds, with the wounds being his left arm pit, right shoulder, right buttocks, right leg, and right side of his head."  Gov't Hearing Ex. 16-5.

[6] It appears Stewart may be referring to one or more proffers Lewis made to the government or grand jury testimony.  That information was also made available to Stewart in advance of trial. *See* Gov't Hearing Exs.1, 3.

[7] According to Stewart, this "proves" he did not shoot Williams.  As explained by defense counsel Dan Schattnik, it does not.  A .45 caliber weapon can easily be modified to shoot a 9 mm bullet. To the extent Stewart argues the ballistics evidence shows that only one weapon was used to shoot Williams, he misstates the evidence.  Larson clearly testified that it was likely that three different guns fired the bullets found at the scene.  Schattnik testified that he opted not to cross-examine about the type of shell casings found at the Williams's murder scene as a matter of trial strategy given that Lewis did not testify as to the type of weapon Stewart used to shoot Williams, and the ballistics evidence was inconclusive and equally supported the government's version of events.  Counsel's decision as to trial strategy is virtually unassailable here and does not support an ineffective assistance of counsel claim, especially when cross-examination carried the very

of this evidence and was therefore unaware of the inconsistencies in this evidence until he reviewed documents given to him in anticipation of the hearing in this case.  Stewart argues that this evidence is therefore "newly discovered" and proves he did not shoot Williams.  Stewart now asserts that his attorneys were ineffective in not pointing these inconsistencies out, and that had they done so he would not have been found guilty of the murder of Williams.  As the hearing progressed, Stewart went on to argue that his attorneys "conspired" with the government to "exclude" the medical examiner from trial in an effort to have him convicted.

As I previously explained with the prior motion to amend filed by Stewart, while his original petition may have been timely filed, any new claims which do not relate back to Stewart's original filing are time-barred under 28 U.S.C. § 2255:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

1) the date on which the judgment of conviction becomes final;

2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

real risk of confirming to the jury that Stewart shot Williams.  *See Ford v. United States*, 917 F.3d 1015, 1024 (8th Cir. 2019) (courts "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel.").

4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

None of the newly-asserted claims relate back to the timely filed motion, or even the previously filed amended motion.  To the extent that Stewart attempts to argue that his claims were timely filed under 28 U.S.C. § 2255(f)(4) because he could not have discovered these facts until he received documents in anticipation of the evidentiary hearing in this case, the argument is flatly contradicted by the evidence in this case.

Stewart not only received the ballistics and medical examiner's report well before trial, but he had also already discovered the alleged inconsistencies between the ballistics report, the medical examiner's report, and Lewis's prior statements. Stewart's attorney John Stobbs testified that he provided all discovery materials to Stewart.  I credit this testimony, which is consistent with the letters Stobbs sent to Stewart, which indicate that discovery was sent to Stewart on December 2, 2015, July 26, 2016, February 12, 2018, February 20, 2018, and April 13, 2018.  Gov't Hearing Exhs. 1A, 1D, 1E, 1F, 1G.  The initial batch of discovery sent to Stewart on December 2, 2015 included the medical examiner's autopsy photos, x-rays, and report on Williams, as well as incident and lab reports, bullet cartridge sheet, and crime scene photos on the Williams' murder.  Gov't Hearing Ex. 3.  On March 20,

2018, Stewart received another complete copy of <u>all</u> the discovery in the case. Gov't Hearing Ex. 1I.

That Stewart may have preferred to receive the discovery in paper format or had some technical difficulties viewing the evidence does not mean that he was not provided the discovery.  His assertion that he could not view the discovery in electronic format is undercut by his statements made to the defense paralegals at the time that he had reviewed the discovery, as well as his conversation with defense investigator, Dan Grothaus.   Stewart subpoenaed Grothaus's documents and testimony for the evidentiary hearing.  Grothaus created a memorandum in connection with his investigation of the facts underlying the criminal case entitled "Don Stewart," which he provided to defense counsel in preparation for trial.  That memorandum was produced at the evidentiary hearing as Gov't Hearing Ex. 23C and summarizes Grothaus's interviews with Stewart on March 8-9, 2018.  The memorandum states: "Don Stewart wants to make sure that Jerome Lewis testifies for the govt., due to his conflicting description of the Williams Crime scene.  Don Stewart is hoping that the Homicide investigation, the medical records, the ballistic reports and the Autopsy are entered as evidence, so as to show Jerome Lewis is not being truthful about the Williams' murder (and Stewart's involvement)."  Gov't

Hearing Ex. 23 C at 10.[8]  This evidence indicates that Stewart knew about the alleged inconsistencies between the evidence and Lewis's testimony well before trial, and certainly before he filed his initial 2255 motion.  Therefore, the claim is not timely under 28 U.S.C. § 2255(f)(4).

The same is true with respect to his claim that counsel was ineffective for failing to call Angelica Brinson as a witness.  Brinson was a friend of Stewart's and therefore known to Stewart prior to his trial.  Stewart argued that Brinson should have been called as a witness because she told Grothaus that he did not "live" at 5129 Northland and that she did not believe he sold drugs.[9]  Stewart knew

---

[8] The document was created by Grothaus contemporaneously with his interviews to assist defense counsel in their representation of Stewart.  I credit the plain language of the document, as well as Grothaus's testimony that he always tries to accurately and meticulously summarize a witness's testimony due to his training as a journalist.  I credit Grothaus's recollections about this document only to the extent that they are consistent with its contents.  I do not credit Stewart's testimony that he did not make these statements to Grothaus.

[9] This is not alibi evidence and would not have been helpful to the jury.  At best, it was inadmissible character evidence, as Brinson's personal opinion that she did not believe that Stewart sold drugs is not relevant to the issue of whether Stewart actually sold drugs.

Moreover, Stewart has attempted to argue throughout this proceeding that he did not "live" at 5129 Northland.  Stewart may not have "lived" there in the sense that he did not pay the utility bills for that address, but the overwhelming evidence establishes that he could be found (or "stayed") there frequently and used the residence regularly and in connection with his illegal activities. Brinson told Grothaus: "Major [her husband] let [Stewart] hang out in the downstairs residence (5129)."  Pet.'s Hearing Ex. F.  Stewart conveniently ignores that portion of Brinson's statement to Grothaus, which of course ties Stewart further to 5129 Northland and would have destroyed any value she may have had as a witness to the defense.  Stewart himself told Grothaus that in 2009/2010, he "generally stayed at three different residences," one of which was 5129 Northland, "which Stewart described as more of a party house and drug house, but not his permanent or even part-time residence."  Gov't Hearing Ex. 23C at 5.  Stewart also admitted to Grothaus that Major Brinson owned an AK-47 and a shotgun and that "he and Brinson and others shot guns in the basement, including his AK-47, the shotgun, a 9mm, and a .32 revolver."

she did not testify and could have raised counsel's failure to call her as a witness as a ground for relief in either his motion or amended motion, as he did with Beverly Fortune and Shaunta Busbey.  He did not.[10]  Plaintiff filed his motion and amended motion on his own behalf and cannot blame standby counsel for this failure, as standby counsel was not even appointed until after the motions were filed and was specifically precluded from filing any additional motions on Stewart's behalf by the Court.

Because all of this evidence upon which Stewart now relies to assert additional grounds for relief was known to Stewart before trial, he cannot claim that they are timely asserted under subsection 4, or any other subsection, of  28 U.S.C. § 2255(f).  These claims are not timely asserted, and there remains no basis

---

Gov't Hearing Ex.23 C at 10.  I do not credit Stewart's testimony that he did not say these things to Grothaus or that he did not recognize Major Brinson's basement.  And then there are Stewart's arrest records, all of which list Stewart's address as 5129 Northland (Gov't Hearing Exhs. 112, 113, 114, 115, 116).  Officers arrested Stewart at 5129 Northland for restraining a woman there against her will (Gov't Hearing Ex.114), and later arrested him there again for drugs and weapons charges.  Gov't Hearing Ex. 115.  Lewis testified that he met up with Stewart at 5129 Northland in preparation for Williams's murder.  Criminal Case 4:15CR441 CDP, Trial Tr. Vol. V at 231-32.

Given this mountain of evidence connecting Stewart to 5129 Northland, defense counsel cannot be considered ineffective for failing to call Brinson to testify that Stewart did not "live" there, and Stewart could not demonstrate that he was prejudiced by any such alleged failure, especially given Brinson's admission that Stewart could be found there.

[10] Although Stewart claimed he submitted Brinson's affidavit in support of his § 2255 motion, the record reflects that he did not.

for the equitable tolling of the statute with respect to these claims.[11]  Stewart's oral

motion to further amend his § 2255 motion is denied, and these claims are denied

as untimely filed.

As explained above, these claims are also meritless and would not entitle

Stewart to relief, even if timely raised, because none of the evidence cited by

Stewart actually proves that he did not shoot Williams.  Stewart's argument that

there was "no evidence" to convict him is belied by the record in this case.  There

was ample evidence, including eyewitness testimony, from which the jury could

convict Stewart of killing Williams.

Finally, Stewart's argument about a "conspiracy" to "exclude" the medical

examiner from trial is baseless.  As explained above, the medical examiner was not

"excluded" from trial.  Instead of the medical examiner testifying live at trial, a

Stipulation of facts about her testimony was read to the jury.  This Stipulation was

signed by Stewart at trial.  Therefore, if there was a "conspiracy" afoot, Stewart

himself was involved.  This Stipulation prevented the jury from hearing testimony

about how Williams languished in a coma for months before finally dying from his

gunshot wounds.  Stobbs testified that it was part of his trial strategy to present the

---

[11] I previously determined that equitable tolling did not apply with respect to the untimely
grounds for relief asserted in Stewart's amended motion.  ECF 75.  The analysis remains the
same with respect to these claims.

evidence of Williams's cause of death by Stipulation.  The jury had already heard evidence of two other violent murders, so Stobbs thought it was helpful to Stewart's case to avoid inundating the jury with more graphic testimony about gruesome acts of violence.  As a matter of trial strategy, counsel's decision is virtually unchallengeable in this § 2255 proceeding and would not, even if timely presented, provide a basis for relief.

For all these reasons, Stewart's oral motion to amend is denied.

## B. Remaining Grounds for Relief

Stewart's amended motion states the remaining two claims for relief which were not previously ruled upon by the Court:

> 9) (called Ground Eight in the amended motion) Trial counsel was ineffective in not calling "alibi and credibility" witnesses Shaunta Busby and Beverly Fortune, who were ready and able to testify on behalf of Stewart, and trial counsel deceived and coerced him into not testifying, based in part on the expectation that his alibi and credibility witnesses would be "his voice on the witness stand;" and

> 11) Trial counsel was ineffective for: (a) failing to provide Stewart with the discovery in his case; (b) failing to play the 911 recordings of witnesses to the jury during trial; (c) failing to obtain hospital records that would have undermined the testimony of government witness Brandon Trendley by showing that Petitioner was shot on October 27, 2011; and (d) failing to file pretrial motions relating to hearsay testimony.

## C. Standard for § 2255 Relief

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was

imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir.2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek postconviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.").  A § 2255 motion "is intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  *United States v. Wilson,* 997 F.2d 429, 431 (8th Cir.1993) (cleaned up).

### D. Standards Governing Ineffective Assistance of Counsel Claims

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel.  *Strickland v. Washington,* 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, Stewart must prove two elements.  First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  When evaluating performance, "judicial scrutiny . . . must be highly

deferential." *Id.* at 689.  The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.*  Second, Stewart "must show that the deficient performance prejudiced the defense." *Id.* at 687.  This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The court need not address both components if Stewart makes an insufficient showing on one of the prongs. *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir. 1995).

I apply *Strickland* to Stewart's remaining claims, both of which allege ineffective assistance of counsel.

### E. Ground 9 (8 of the amended motion)

In Ground 9 (8 of his amended motion), Stewart alleges that trial counsel was ineffective for failing to call his daughter Shaunta Busbey and his friend Beverly Fortune as "alibi and credibility" witnesses, who were ready and able to testify on his behalf.  Stewart also claims that trial counsel deceived and coerced him into not testifying by telling him that these witnesses would be "his voice on the witness stand."

The first prong of the *Strickland* test requires a showing that counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88.  Counsel has "a duty to make reasonable investigations or to make

14

a reasonable decision that makes particular investigations unnecessary." *Id.* at 691.

That includes a duty to investigate important defenses and to adequately "explore

all avenues leading to facts relevant to guilt and degree of guilt or penalty."

*Eldridge v. Atkins*, 665 F.2d 228, 232 (8th Cir. 1981).  "Reasonable professional

judgment is not infallible.  Failure to discover a particular piece of marginally

helpful information does not render legal representation constitutionally deficient."

*Ford v. United States*, 917 F.3d 1015, 1022 (8th Cir. 2019).

 "Decisions about what to do with the results of investigation are strategic

decisions that are virtually immune to second-guessing by habeas courts."

*Marcrum v. Luebbers*, 509 F.3d 489, 506 (8th Cir. 2007).  This is "a context-

dependent consideration of the challenged conduct as seen from counsel's

perspective at the time without the distorting effects of hindsight."  *Ortiz v. United

States*, 664 F.3d 1151, 1169 (8th Cir. 2011) (cleaned up).  "The decision not to call

a witness is a virtually unchallengeable decision of trial strategy."  *Ford*, 917 F.3d

at 1024 (quoting *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005)).

 In his motion, Stewart claimed that Busbey was willing to testify that he was

recovering from a gunshot wound in October of 2011 and therefore could not have

sold drugs as testified to at trial by Brandon Trendley.  Brandon Trendley had

testified that for several years he purchased heroin daily from Stewart at 5129

Northland, including after he was arrested for doing so in August of 2010.  Case

4:15CR441 CDP, Trial Tr. II at 92-98.  On cross-examination, when asked by defense counsel if he continued to purchase drugs from Stewart "all of the rest of 2010" he answered "Yes."  The next question was "And all the rest of 2011" to which Trendley again answered "Yes."  Case 4:15CR441 CDP, Trial Tr. II at 116. Fortune averred that she would have also testified that Stewart had been shot and was recovering in October of 2011 and that he did not "live" at 5129 Northland.

Grothaus interviewed Fortune during his pretrial investigation and drafted a contemporaneous memorandum summarizing his conversation with her.  That memorandum was introduced at the evidentiary hearing as Government's Exhibit 23B.  Fortune lived on Northland and knew Stewart and Major Brinson.  She told Grothaus that she never knew Stewart to sell drugs, but that he smoked weed. When questioned about the murders, Fortune told Grothaus that she called Stewart when she heard the shots to ask him if he knew who had been shot and "(Both times) [Stewart] answered the phone.  He was up at Majors (5129 Northland) . . . Asked later, Beverly said, 'Both times, when I heard gun shots, I knew Don was around or up the street."  Gov't Hearing Ex. 23B.

Based on Fortune's statement to Grothaus, Schattnik testified that Fortune was not going to be called as a witness because her testimony could place Stewart on Northland and at the scene of the crime for two of the murders.  He deemed her a "non-alibi" because if she testified contrary to her statement to Grothaus, he

16

would have been ethically bound to produce her earlier statement, which places Stewart at the scene of two murders.

Schattnik and Stobbs testified that they were first made aware of Busbey's desire to testify during trial.  Given the timing and the uncertainty about her testimony and potential avenues of cross-examination, Stobbs made the strategic decision not to call her as a witness.  Stobbs testified that family members generally make poor alibi witnesses and can weaken a case, particularly here where the defense offered the testimony of two eyewitnesses who were unconnected to Stewart or the case (referred to by counsel as "civilian witnesses" and were Barbara Fletcher regarding Michael McGill's murder and Nicole Young regarding Williams's murder).  Criminal Case 4:15CR441 CDP, Trial Tr. Vol. IX at 145, 158.  Unlike either Busbey or Fortune, these witnesses observed the murders and testified that the perpetrators did not match Stewart's description.

Busbey and Fortune testified at the evidentiary hearing.  Busbey stated that she cared for her father after he was shot, but that was after the murders in this case and she could not provide him an alibi for those murders.  Fortune testified that Stewart was known as O.G. and that she knew he was often at 5129 Northland.  When asked if she told Grothaus that Stewart was at 5129 Northland during the time of two murders, she claimed that she could not recall and admitted that she

may have told him that.  Like Busbey, Fortune could not provide Stewart with an alibi for any of the murders.

Counsel was not ineffective for opting not to present the testimony of Busbey and Fortune at trial, as their testimony could not provide an alibi for any of the charged murders and, in the case of Fortune, carried the very real possibility of actually placing Stewart in the immediate area for two of them.  To the extent Busbey and Fortune would have testified that Stewart did not "live" at 5129 Northland, the relevance and helpfulness of that testimony is discounted for the same reasons discussed above in connection with Brinson's alleged testimony.

As for Busbey, her averment that her father could not have been selling drugs on Northland at the end of 2011 because he had been shot in late October of that year is not evidence that would have provided any significant impeachment of witness Trendley.  Trendley was arrested after buying drugs from Stewart at that address in August of 2010.  He testified that he had been buying drugs from Stewart at that location for some time before the arrest and continued doing so all that year and the next.   At best, this impeachment evidence would have shown that Trendley miscalculated or misstated the ending of his drug purchases from Stewart by a couple of months.  Moreover, Trendley testified that he was not one hundred percent certain about when he purchased heroin from Stewart after his arrest in August of 2010.  Criminal Case 4:15CR441 CDP, Trial Tr. Vol. II at 97.

There is nothing about this proposed evidence that would have changed the outcome of the case, and counsel's strategic decision not to put on the testimony of Busbey and Fortune is entitled to deference and does not constitute ineffective assistance of counsel.

In his motion, Stewart alleges that trial counsel deceived and coerced him into not testifying, based in part on the expectation that his alibi and credibility witnesses would be "his voice on the witness stand."  Both Stobbs and Schattnik testified that Stewart made the decision not to testify, and that had he indicated an intention to testify they would have prepared him to do so and put him on the stand.  I credit the testimony of counsel as consistent with the statements made to me by Stewart on the record at trial:

> THE COURT: So even though you can, you know, listen to whatever advice they [Stewart's trial counsel] give you, whether you testify or not is your decision, and so do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: So like they can't say, "Oh, you can't testify" or anything like that. You have to make up your own mind. Do you understand?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And have you made up your own mind?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you wish not to testify?
>
> THE DEFENDANT: I don't wish to testify.

THE COURT: In other words, you don't want to testify?

THE DEFENDANT: No.

Criminal Case 4:15CR441 CDP, Trial Tr. Vol. IX at 159-161.  I do not credit Stewart's contradictory testimony at the evidentiary hearing that he was coerced into not testifying.  Stewart's claim that his attorneys were ineffective because they coerced him into not testifying is denied.  Ground 9 (8 of the amended motion) is denied.

**F. Ground 11**

In Ground 11, Stewart alleges that trial counsel was also ineffective for: (a) failing to provide Stewart with the discovery in his case; (b) failing to play the 911 recordings of witnesses to the jury during trial; (c) failing to obtain hospital records that would have undermined the testimony of Trendley by showing that Stewart was shot on October 27, 2011; and (d) failing to file pretrial motions relating to hearsay testimony.

I have already addressed the issue of Stewart's receipt of discovery in this case in connection with his oral motion to amend.  As explained above, Stewart received all of the discovery in his criminal case from counsel well before trial.  I do not credit Stewart's assertion otherwise.  For the reasons set forth above, Stewart's claim that counsel was ineffective for failing to provide discovery is denied.

Nor was counsel ineffective for failing to present Stewart's hospital records showing that he was shot on October 27, 2011.  For the same reasons discussed above in connection with Busbey's testimony, these records would not have impeached the testimony of Trendley, nor would the records have been outcome determinative, particularly where there was ample evidence apart from Trendley's testimony of Stewart's drug dealing activities.  As Stewart cannot demonstrate either deficient performance or prejudice, his ineffective assistance of counsel claim fails.

Stewart fails to explain in his motion how counsel's purported failure to play 911 tapes resulted in ineffective assistance of counsel, and he did not address the issue during the evidentiary hearing, either.  This claim is denied, as conclusory assertions do not entitle Stewart to relief.

Finally, Stewart's argument that counsel was ineffective for failing to file pretrial motions relating to hearsay testimony is duplicative of the claim raised and rejected in Ground 10.  As explained in connection with the denial of Ground 10, counsel made numerous pretrial and trial objections to the introduction of this evidence, which I overruled because the evidence was properly admitted.  As counsel cannot be ineffective for failing to win meritless arguments, this ineffective assistance of counsel claim is denied.  *See United States v. Portz*, 2023

WL 3585930, at *3 (D. Minn. May 22, 2023) (no ineffective assistance of counsel where counsel raised argument but it was rejected by court).

Ground 11 of Stewart's § 2255 motion is denied.

### G. I Will Not Issue a Certificate of Appealability

As Stewart has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that petitioner's oral motion to amend is denied, and Grounds Nine (called Ground Eight in the Amended Motion) and Eleven of the Motion and Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 [1, 24] are denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Stewart has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order and

the Memorandum and Order issued on October 30, 2023 is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of February, 2024.